Maximilian Moss, S.
This is a proceeding to obtain a construction of testator’s will probated on July 1, 1940, and in particular, section 2 of article “ Sixth ” thereof.
Testator created a residuary trust for the lives of his two sisters with income payable to them and a brother in certain proportions under varying contingencies. Section 2 provides for distribution of the principal of the trust upon the death of the survivor of the two sisters. The surviving sister died, thus terminating the trust. The brother predeceased the surviving sister.
The question of construction relates to the distribution of the three fifths of the remainder willed to the brother. Did the testator intend to create a vested remainder in his brother so that his estate would receive the gift upon the termination of the trust, even though the brother was not then living, as is the case; or was the gift intended to take effect only if he was “ living and in being at the death of the survivor of my two sisters ”? The first position is taken by the executor and beneficiaries of *913 the brother’s estate; the second by two nieces, children of the first of the sisters to die.
The nieces sought to introduce in evidence a memorandum made by an officer in the personal trust division of the petitioner trust company regarding a conference he had with testator concerning testator’s will. The memorandum was made about three months after the execution of the will. The nieces maintained that the memorandum is admissible as an evidentiary document to indicate the intent of the testator.
The answer to this contention might well be given in the language of the court in Matter of Salterini (7 Misc 2d 497) at pages 498-499 as follows: “At this point it is appropriate for the court to consider the application of the widow’s coexecutor that oral proof be received for the purpose of resolving the ambiguities which are said to mark the will and to obscure the intention of the testator. By this time it should be clear that the rules of evidence applicable to the New York law of estates forbid the reception of such testimony, assuming it to be available. If the court were permitted to so far depart from the statutory and judicially fixed standards prescribed in such situations as to substitute the scrivener’s recollection of what the deceased had told him for the language of the will itself it becomes plain at once that the instrument as the repository of the testator’s testamentary program would cease to have any usefulness whatsoever. That is the reason why the courts have consistently declined to permit the introduction of extrinsic evidence except in those eases where the ambiguity exists outside the instrument (viz.— ‘ I give my white horse to David Jones.’ Which white horse? Which David Jones?) or where the language of the will gives rise to an otherwise irreconcilable inconsistency, contains a manifest conflict in terms or is marked by gross uncertainty (Dwight v. Fancher, 245 N. Y. 71; Matter of Tamargo, 220 N. Y. 225; Matter of Smith, 254 N. Y. 283; Brown v. Quintard, 177 N. Y. 75).”
Inasmuch as the court considers the provisions of the will under construction to be unambiguous the court rules that the memorandum is inadmissible (Matter of Ittleson, 197 Misc. 786; Matter of Salterini, 1 Misc 2d 497, supra; cf. Dwight v. Fancher, 245 N. Y. 71; Matter of Tamargo, 220 N. Y. 225; Matter of Smith, 254 N. Y. 283; Brown v. Quintard, 177 N. Y. 75; Matter of Deane, 4 N Y 2d 326; Matter of Bloomberg, 6 A D 2d 132).
The court construes the will as creating a remainder which vested in the brother at testator’s death and passed to his estate upon termination of the trust.
Proceed accordingly.