[654 NYS2d 131]

In the Matter of THEODORE O. PROUNIS, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 24, 1997

### APPEARANCES OF COUNSEL

*Barbara S. Gillers* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Gentile & Benjamin,* and *Reboul, MacMurray, Hewitt, Maynard & Kristol* for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent, Theodore O. Prounis, was admitted to the practice of law in the State of New York by the First Judicial Department on March 30, 1964.

By motion dated September 6, 1996, the Departmental Disciplinary Committee is seeking an order pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii) immediately suspending respondent from the practice of law until further order of the Court upon the ground that respondent has made substantial admissions under oath that he has committed acts of professional misconduct, and upon other uncontroverted evidence of professional misconduct.

The instant relief is sought based upon evidence that respondent has commingled clients' money, used clients' money for personal purposes and has refused or ignored the requests of executors for an accounting and delivery of estate funds.

Petitioner seeks respondent's immediate suspension primarily based upon his mishandling of estate funds. Respondent had been a trusted friend and adviser to James B. Stuart and his family. He had drafted and witnessed Mr. Stuart's will and two trust agreements.

Between March 9, 1996 and May 2, 1996, respondent appeared for three sessions of an investigatory deposition and provided the Committee with over 7,500 documents. Respondent's admissions under oath at these sessions, as well as bank records and other documents, establish that respondent misled his own clients (the executors), both before and after they retained new counsel, about his handling of Stuart money, deceived the Surrogate's Court and the Supreme Court about his handling of those funds and violated fundamental fiduciary obligations.

The Committee maintains that respondent's admissions under oath and other documentary evidence demonstrate that respondent commingled Stuart funds with other clients' money. The Committee also maintains that respondent used money from the Special Account to make personal payments to himself, his wife, charities and law firm expenses. The Committee additionally points out that respondent told the Committee that he keeps only client money in the Special Account and that he routinely withdraws money to pay clients' expenses, whether or not the client has made a deposit to cover those payments. The Committee points out that the extent to which respondent actually borrowed from one client to pay another client's expenses, and, as a separate matter, how much of other clients' money respondent used for personal purposes, is still under review.

22 NYCRR 603.4 (e) (1) provides as follows:

"An attorney who is the subject of an investigation, or of charges by the Departmental Disciplinary Committee of profes-

sional misconduct, or who is the subject of a disciplinary proceeding pending in this court against whom a petition has been filed pursuant to this section, or upon whom a notice has been served pursuant to section 603.3 (b) of this Part, may be suspended from the practice of law, pending consideration of the charges against the attorney, upon a finding that the attorney is guilty of professional misconduct immediately threatening the public interest. Such a finding shall be based upon * * *

"(ii) a substantial admission under oath that the attorney has committed an act or acts of professional misconduct, or,

"(iii) other uncontested evidence of professional misconduct".

Although respondent has maintained that he had an agreement with Mr. Stuart that he could use the Stuart funds for personal purposes, he has not been able to provide any documentation to sustain his position. The Committee contends that even if respondent had made such an oral agreement, such an arrangement violates the Code of Professional Responsibility (Code). Further, the will and the trust documents do not give respondent the right to use Stuart money for personal purposes. Thus, respondent's testimony, which is at variance with the testator's clear intent, would not be admissible at any hearing to determine the extent of respondent's misuse of funds he held as a fiduciary (CPLR 4519). Finally, any oral agreement respondent had with the Stuarts regarding his personal use of the funds would be void as against public policy under the EPTL and the SCPA.

The Committee also points out that it makes no difference whether the Stuart money was to be distributed according to the trust agreements or as outright bequests under the will, because in either case, respondent was prohibited from commingling those funds with other clients' funds or with his own, and from using the money for personal purposes. First, under the Code of Professional Responsibility, respondent was a fiduciary with respect to the Stuart funds and was required to keep those funds separate from other third-party funds (DR 9-102 [A], [B]; 22 NYCRR 1200.46). Additionally, as the Committee points out, both the EPTL and the SCPA prohibit commingling of trust or estate money with other funds (EPTL 11-1.6; SCPA 719 [7]). The Committee also points out that the personal use of funds held as a fiduciary is absolutely prohibited. This Court has suspended attorneys on an interim basis for commingling and personal use of funds (see, Matter of Ampel, 196 AD2d 105, 107).

Petitioner further maintains that respondent committed misconduct in violation of DR 9-102 (C) by failing to account for and turn over the funds to the executors after repeated requests from them over a period of at least two years. Petitioner also maintains that by failing to comply with the Surrogate's order, by filing a misleading letter with the Surrogate regarding his custody of the funds, and by submitting a misleading letter in the Supreme Court regarding his role with respect to the funds, respondent violated DR 1-102 (A) (4) and (5) (22 NYCRR 1200.3).

As a result of respondent's admissions under oath as well as the documentary evidence, the Committee has clearly demonstrated that respondent commingled client funds in the Special Account and improperly used those funds for personal purposes. Respondent has not disputed his commingling and use of account funds for personal purposes, but has merely claimed authority to do so. Nevertheless, respondent has failed to come forward with any competent evidence regarding this claimed authority.

Respondent's legal argument that his use of the Special Account was proper under *Matter of Vignola* (218 AD2d 310) is equally meritless. Respondent's argument is based on the fact that only client funds, and not respondent's personal or law firm funds, were placed in the account. However, although Vignola also placed no funds of his own into the real estate account, the facts of *Vignola* are clearly distinguishable from the facts in the instant case. Attorney Vignola literally acted as a conduit with respect to investors' funds placed in an account pending investments in mortgages. Upon receipt of investors' funds, these funds were deposited into an account in which respondent was a mere signatory. The opinion in *Vignola* specifically states, "Respondent perceived his role as providing an accommodation to DiLillo and the investors and did not believe he had any authority to independently draw funds from or otherwise use the account" (218 AD2d, *supra*, at 311). Here, by contrast, respondent is not a mere signatory to the account, but has claimed authority to use the funds in the account at his will. Respondent was not merely a conduit of investor funds.

Respondent's placement of the Stuart funds into an account with other client funds and to which respondent claimed authority to use such funds for personal purposes is particularly egregious. As petitioner points out, there is nothing in the will or the trust agreements to support respondent's

claimed authority. Although respondent claims that the Stuarts agreed to such an arrangement, such an agreement violates DR 5-104 (A) (22 NYCRR 1200.23) since respondent clearly got the better of the bargain. Additionally, since respondent held the Stuart funds as a fiduciary, the EPTL and SCPA are applicable and prohibited respondent from (1) commingling the funds with other clients' or with his own money; and (2) using the funds for personal purposes. It is quite disingenuous for respondent to claim that he did not act as a fiduciary with respect to the Stuart funds when he argued before the Surrogate's Court that he acted as a de facto trustee with respect to the funds. As a matter of fact and law, as the lawyer for the executors and the trustee, who held the funds in an account in his firm's name, respondent was most definitely a fiduciary with respect to the funds and hence, was subject to the anti-commingling and anti-conversion rules set forth in the EPTL and the SCPA, as well as the Code.

Finally, respondent's behavior before the Surrogate's Court and the Supreme Court was reprehensible. Respondent has claimed a right to ignore the Surrogate's order that he release the Stuart funds based upon the failure of that court to obtain jurisdiction over his firm (the holder of the Special Account). However, respondent was not free to disobey the Surrogate's order since he personally was the only signatory on the Special Account which held the funds and he in fact did use the funds for personal purposes. In addition to disobeying the order of the Surrogate's Court, respondent misled the court by suggesting that the funds were intact when, in fact, he had spent much of the money.

Accordingly, respondent's cross motion for an order directing the Committee to commence hearings before a duly constituted Hearing Panel within 60 days of the date of this Court's order should be granted as provided for pursuant to 22 NYCRR 603.4 (e) (2), and the Committee's motion for an order suspending respondent, pending the conclusion of all disciplinary proceedings and until further order of this Court, pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii), should also be granted, effective immediately. Respondent is further directed to provide the Committee with any additional documents he has concerning the operation of the Special Account or an affidavit saying that he has no more such documents within 30 days of the date of this order.

ROSENBERGER, J. P., NARDELLI, RUBIN, WILLIAMS and TOM, JJ., concur.

Respondent is suspended from the practice of law in the State of New York, effective immediately, pending the conclusion of all disciplinary proceedings, and until the further order of this Court; and respondent is directed to provide the Committee with certain documents, all as indicated. The Committee is directed to commence hearings before a duly constituted Hearing Panel, as indicated.